IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY, | : | CIVIL ACTION NO. 19-5578 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SIGISMONDI FOREIGN CAR SPECIALISTS, INC., | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    April 12, 2021

## I.    INTRODUCTION

In this commercial property insurance coverage dispute, Plaintiff State Auto Property and Casualty Insurance Company ("State Auto") seeks a declaration of its rights and obligations under a policy it issued to Defendant Sigismondi Foreign Car Specialists, Inc. ("Sigismondi"), an auto repair shop. State Auto also brings claims against Sigismondi for violations of Pennsylvania's Insurance Fraud Act, common law fraud, and reverse bad faith. In turn, Sigismondi brought a counterclaim against State Auto for statutory bad faith, which the Court dismissed.

Sigismondi now asks the Court to vacate its decision dismissing the counterclaim. The parties' motions for summary judgment are also before the Court.

For the reasons set forth below, the Court will deny Sigismondi's motion to vacate the order dismissing the counterclaim, as well as its motion for summary judgment. The Court will grant in part and deny in part State Auto's motion for summary judgment.

## II.   BACKGROUND[1]

The State Auto policy at issue provided coverage to Sigismondi for a commercial property in Philadelphia where the auto repair shop is located. In January 2019, Sigismondi presented a claim under the policy for water damage to its building and certain inventory, including automobile and audio equipment.

Sigismondi retained a public adjuster, Ron Spay, who in turn hired Canio Pascale of AC Estimates, LLC to help prepare a list of the damaged inventory. State Auto retained Chad Foster of Chad Foster & Associates, LLC Salvors and Appraisers to determine the replacement cost value of the damaged inventory.

---

[1]   As required at the summary judgment stage, the Court views the facts "in the light most favorable" to the nonmoving party and draw "all reasonable inferences" in that party's favor. Young v. Martin, 801 F.3d 172, 174 (3d Cir. 2015).

Foster created a spreadsheet of the damaged items with replacement cost figures. He testified that he used more than four hundred price sources to determine the replacement cost values for those items. Foster sent the proposed spreadsheet to Pascale and requested that he forward the inventory to Sigismondi to confirm the replacement costs.

In response, Sigismondi provided Foster with claimed replacement cost figures. Many of those figures were substantially greater than the values determined by Foster. Because of this discrepancy, State Auto asked Sigismondi to submit supporting documentation for the claimed valuations. Sigismondi then emailed approximately ten vendor invoices to Foster. Sigismondi now admits that it used computer software to edit at least some of the invoices submitted to State Auto, including by entering price information and dates. Neither Spay nor Pascale advised Sigismondi to create any invoices to support its claimed valuations.

Foster alerted State Auto that Sigismondi had submitted altered vendor invoices. To address this issue, State Auto requested the Examinations Under Oath of Joseph Sigismondi, Sigismondi's owner, and Debbie Miller, an employee of Sigismondi.

During his examination, Mr. Sigismondi provided sworn testimony that the invoices provided to State Auto were scanned

3

into a computer and altered. He also testified that Miller
called a vendor to obtain the price for an item listed on an
altered invoice.

State Auto submits that Mr. Sigismondi's testimony about
Miller contacting a vendor is false. Miller testified that she
never contacted any vendors for the claimed replacement cost
valuations and that Mr. Sigismondi provided her the values of
the inventory items to enter into the altered invoices. Further
contradicting Mr. Sigismondi's testimony, the president of the
vendor in question submitted an affidavit stating that neither
Mr. Sigismondi nor Miller contacted the vendor to ask for
pricing information. Sigismondi did not address the veracity of
Mr. Sigismondi's testimony in its response in opposition to
State Auto's motion for summary judgment.

Based on the discovery of the altered invoices, State Auto
denied Sigismondi's claim. In November 2019, State Auto filed
the instant action. While Sigismondi's Answer to State Auto's
Complaint did not contain any counterclaims, Sigismondi
subsequently sought leave to file a statutory bad faith
counterclaim, which the Court granted. Upon State Auto's motion,
the counterclaim was dismissed.

## III. LEGAL STANDARD

Summary judgment is "appropriate only when 'there
is no genuine dispute as to any material fact and the movant is

4

entitled to judgment as a matter of law.'" <u>Physicians Healthsource, Inc. v. Cephalon, Inc.</u>, 954 F.3d 615, 618 (3d Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). A fact is material "if it 'might affect the outcome of the suit under the governing law.'" <u>Id.</u> (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). A factual dispute is genuine "if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Id.</u> (quoting <u>Anderson</u>, 477 U.S. at 248).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. If the movant meets this obligation, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250. At the summary judgment stage, the Court must view the facts "in the light most favorable to" the nonmoving party and "draw all reasonable inferences in favor" of that party. <u>Young v. Martin</u>, 801 F.3d 172, 174 (3d Cir. 2015).

When confronted with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2720 (4th ed. 2020).

## IV.  DISCUSSION

### A.  Counterclaim

Sigismondi first asks the Court to vacate the order dismissing the counterclaim, which alleges State Auto acted in bad faith. In the event the counterclaim is reinstated, the parties have filed cross-motions for summary judgment on the counterclaim.

To prevail on a bad faith insurance claim, a party "must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." Rancosky v. Wash. Nat'l Ins. Co., 170 A.3d 364, 365 (Pa. 2017); see also 42 Pa. Stat. and Cons. Stat. Ann. § 8371 (West 2021).

On August 21, 2020, State Auto moved to dismiss the statutory bad faith counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing the counterclaim lacked supporting factual allegations. Sigismondi did not timely file a response. On November 13, 2020, the Court granted the motion as unopposed.

Sigismondi now asks the Court to vacate the order dismissing the counterclaim and to construe its motion for partial summary judgment filed on October 30, 2020, as a response in opposition to the motion to dismiss. However, that

6

motion ignores the pending motion to dismiss and instead asks the court to "enter partial summary judgment" in Sigismondi's favor. See Def.'s Mot. Partial Summ. J. 1, ECF No. 29. Further, Sigismondi filed the motion for partial summary judgment more than two months after State Auto filed the motion to dismiss the counterclaim and has provided no explanation or justification for its delay. Therefore, the Court will deny Sigismondi's motion to vacate the Court's order dismissing the counterclaim.

Even if the Court were to reach the merits of the counterclaim, Sigismondi's motion for summary judgment would be denied, and State Auto's cross-motion would be granted. Sigismondi has pointed to no record evidence indicating that State Auto lacked a reasonable basis for denying benefits under the policy, let alone that State Auto "knew of or recklessly disregarded" the lack of such a basis. See Rancosky, 170 A.3d at 365. To the contrary, the record reflects that State Auto responded reasonably to learning that Sigismondi had submitted altered vendor invoices to support its claim under the policy.

Therefore, the Court will deny Sigismondi's motion to vacate the Court's order dismissing the counterclaim. The parties' cross-motions for summary judgment on the counterclaim will be denied as moot.

B.    **Counts I through IV**

State Auto moves for summary judgment on the following Counts: the declaratory judgment (Count I), violations of Pennsylvania's Insurance Fraud Act (Count II), and common law fraud (Count III).

Sigismondi appears to move for summary judgment on the declaratory judgment (Count I) and the claim for reverse bad faith (Count IV).[2]

The Court will address the parties' motions seriatim.

1.    Declaratory Judgment (Count I)

The parties have filed cross-motions for summary judgment on State Auto's declaratory judgment claim (Count I), which asks the Court to declare that Sigismondi "violated the Concealment, Misrepresentation or Fraud Condition" in the policy, that State Auto "is not obligated to provide coverage" for the claim, and that the policy "is void by operation of . . . [Sigismondi's] concealment, misrepresentation or fraud." Compl. 17–18, ECF No. 1.

The Declaratory Judgment Act permits "any Court of the United States, upon the filing of an appropriate pleading," to

---

[2]    While its briefing is not entirely clear as to the Counts on which it moves for summary judgment, Sigismondi asks the Court to "hold that State Auto . . . owes payment to [Sigismondi] under the relevant insurance policy; that [State Auto's] claim for reverse bad faith is denied; and [Sigismondi's] claim for bad faith is granted." Def.'s Mot. Summ. J. 1, ECF No. 29.

"declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Generally, to void an insurance policy under Pennsylvania law, an insurer must prove the following factors by clear and convincing evidence: "(1) the insured made a false representation; (2) the insured knew the representation was false when it was made or the insured made the representation in bad faith; and (3) the representation was material to the risk being insured." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 129 (3d Cir. 2005) (citing Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004), as amended (Aug. 12, 2004)). "The clear and convincing evidence standard requires evidence that is 'so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue.'" Commonwealth v. Maldonado, 838 A.2d 710, 715 (Pa. 2003) (alterations in original) (quoting Rohm & Haas Co. v. Cont'l Cas. Co., 781 A.2d 1172, 1179 (Pa. 2001)).

a.   State Auto's Motion

State Auto argues it is entitled to summary judgment on this Count because Sigismondi materially breached the policy's concealment or fraud provision by altering the invoices at issue.

9

"Pennsylvania courts have long ruled that a violation of the fraud and concealment provision of an insurance policy . . . serves as a complete bar to the insured's recovery under the policy." Millard v. Shelby Cas. Ins. Co., No. 3:CV-02-1902, 2005 WL 2035860, at *4 (M.D. Pa. Aug. 24, 2005) (first citing Sack v. Glens Falls Ins. Co., 61 A.2d 852, 852-53 (Pa. 1984); and then citing Ellis v. Agric. Ins. Co., 7 Pa. Super. 264, 265 (1898)).

Here, that provision states:

**C. Concealment, Misrepresentation or Fraud**

This Policy is void in any case of fraud by you as it relates to the policy at any time. It is also void if you or any insured at any time, intentionally conceal or misrepresent a material fact concerning:

1. the policy;
2. the covered property;
3. your interest in the covered property; and
4. a claim under the policy.

Pl.'s Mot. Summ. J. 16, ECF No. 26-2.

Sigismondi does not dispute that it made misrepresentations to State Auto by submitting altered invoices, or that it knew its representations were false when it made them. Therefore, the Court's analysis turns on whether the misrepresentations were material.

"In an insurance action, 'a misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the facts misrepresented.'" Pettinaro Enter., LLC v. Cont'l Cas.

10

Co., 450 F. App'x 178, 182 (3d Cir. 2011) (quoting Long v. Ins. Co. N. Am., 670 F.2d 930, 934 (10th Cir. 1982)); see also Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC, 417 F. Supp. 3d 531, 564 (E.D. Pa. 2019) ("A fact is material 'if it concerns a subject relevant and germane to the insurer's investigation as it was then proceeding, or if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented.'" (quoting Wezorek v. Allstate Ins. Co., No. CIV.A.06-CV-1031, 2007 WL 2264096, at *15 (E.D. Pa. Aug. 7, 2007))).

Sigismondi argues its misrepresentations were not material. In support of this argument, Sigismondi points to Foster's deposition testimony, as well as to the deposition testimony of Mike Wakefield, the State Auto property adjuster assigned to Sigismondi's claim. Both witnesses testified that an item's purchase price does not necessarily determine its replacement cost coverage since some items, including electronics, change in value over time. See Foster Dep. 26:9-21, 48:9-14, ECF No. 26-7; Wakefield Dep. 26:10-18, 28:2-21, ECF No. 26-10. Sigismondi argues this testimony establishes that "the original purchase price would have little, if any, influence on what was determined to be 'replacement cost' or the 'Actual Cash Value' for an item." Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 11, ECF No.

36. Therefore, Sigismondi argues, State Auto has failed to establish that Sigismondi's misrepresentations were material.

State Auto disagrees, pointing to Commonwealth v. Risoldi, 238 A.3d 434 (Pa. Super. Ct. 2020). In that case, the defendant, Claire Risoldi, challenged her criminal conviction for insurance fraud, inter alia. After Risoldi's home caught fire and suffered significant damages, she sought coverage from her insurer for replacement costs for damaged items, including more than $2 million for drapes that had been destroyed by the fire. During the investigation, the insurer became suspicious that some of the costs for which she sought reimbursement, including for the drapes, were inflated. Id. at 438. The Office of the Attorney General conducted a lengthy investigation, resulting in various charges against Risoldi.

On appeal, Risoldi argued the evidence was insufficient to support her conviction for insurance fraud related to the drapes claim, inter alia. Id. at 454. The evidence before the jury included testimony that Risoldi "submitted . . . fabricated receipts intentionally in support of her claim to entice [the insurer] into paying her $2.3 million to replace her drapes." Id. at 455. The appellate court considered and rejected "Risoldi's argument that submitting fabricated receipts would not constitute insurance fraud if the receipts were created by Risoldi after the fact to document a transaction that had

12

previously occurred." Id. at 455 n.21. The court reasoned that "[a] fabricated receipt created by a consumer and presented as an official document from a retailer, without the retailer's knowledge, constitutes false or misleading information under this definition, and certainly would be material to the insurance claim." Id.

Here, too, Sigismondi's fabricated invoices are material to its insurance claim. State Auto requested the invoices at issue because Sigismondi submitted its own replacement cost figures to State Auto. State Auto points to record evidence indicating that it "specifically requested supporting documentation in response to Sigismondi's claimed replacement cost figures" and that "Sigismondi was aware that State Auto would use the invoices to determine and verify the amount of loss." Pl.'s Mot. Summ. J. 17-18, ECF No. 26-2.[3]

---

[3]   Sigismondi was granted leave to address the Risoldi case, the controlling authority, which it had not addressed in response to State Auto's motion for summary judgment.

In its supplemental brief addressing the case, Sigismondi seeks to distinguish the instant action from Risoldi by arguing that the invoices it submitted to State Auto "were not receipts as they were not marked paid and [Sigismondi] is not claiming to have received anything new as they were produced in response to a specific request for original cost and so were to communicate original prices for items already purchased." Def.'s Suppl. Mem. 5, ECF No. 43. This argument is unpersuasive, as it attempts to shift the burden onto the recipient of an invoice to identify its falsity.

Sigismondi also argues the invoices at issue "could not mislead as being original invoices because they are dated March 4, 2019 and the loss occurrence was in January 2019." Id. There are several problems with this argument.

Construing the record in the light most favorable to
Sigismondi, and applying the clear and convincing evidence
standard, no reasonable jury could find that Sigismondi did not
knowingly make false representations by submitting altered
invoices in support of its claim and that the representations
were material to its claim.[4] Therefore, State Auto is entitled to
summary judgment on this Count.

---

First, the argument goes beyond the Court's leave to address Risoldi
and is therefore untimely, as Sigismondi did not raise it as a genuine issue
of material fact in either its response to State Auto's motion for summary
judgment or in its partial motion for summary judgment. See Def.'s Mot.
Partial Summ. J., ECF No. 29; Def.'s Resp. Opp'n Pl.'s Mot. Summ. J., ECF No.
36; see also Yanoski v. Silgan White Cap Ams., LLC, 179 F. Supp. 3d 413, 426
(M.D. Pa. 2016) ("It is well-established that a party's failure to argue an
issue on summary judgment constitutes a waiver of that issue." (citing Ankele
v. Hambrick, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003))).

Second, Sigismondi does not cite to any record materials to support
this argument. See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201
(3d Cir. 2006) ("[T]he non-moving party must rebut the motion [for summary
judgment] with facts in the record and cannot rest solely on assertions made
in the pleadings, legal memoranda, or oral argument." (citing Jersey Cent.
Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109–10 (3d Cir. 1985))).

Finally, this argument again tasks the party receiving the invoices
with identifying their falsity.

For these reasons, Sigismondi's attempts to distinguish Risoldi are
unpersuasive.

[4]     State Auto also argues that Mr. Sigismondi's testimony during his
Examination Under Oath that Miller contacted vendors to obtain valuations
constitutes a material breach of the policy's Concealment, Misrepresentation,
and Fraud provision. In its response in opposition to State Auto's motion,
Sigismondi did not address the veracity of these statements. Therefore, the
Court can treat as undisputed the fact that Mr. Sigismondi's testimony about
Miller contacting vendors is false.

However, the Court need not determine whether this testimony
constitutes a second material misrepresentation, as the falsified invoices,
standing alone, constitute a material breach of the policy.

b.   Sigismondi's Motion

In its motion for summary judgment on the declaratory judgment claim, Sigismondi again argues the altered invoices were not material to State Auto's investigation of its claim. This argument was unpersuasive even when the record was construed in Sigismondi's favor. See supra Section IV.B.1.a. Here, with the record construed in State Auto's favor, it fails again.

2.   Pennsylvania's Insurance Fraud Act (Count II)

Next, State Auto moves for summary judgment on its claim that Sigismondi violated Pennsylvania's Insurance Fraud Act, which creates a private cause of action for insurers to remedy various types of fraud. See 18 Pa. Stat. and Cons. Stat. Ann § 4117(g) (West 2021) ("An insurer damaged as a result of a violation of this section may sue therefor in any court of competent jurisdiction to recover compensatory damages, which may include reasonable investigation expenses, costs of suit and attorney fees.").

"A person violates Pennsylvania's insurance fraud statute by: '(1) presenting false, incomplete, or misleading statements to [the insurer]; 2) that were material to the claim;' and 3) which were knowingly made with an intent to defraud." Wezorek, 2007 WL 2264096, at *14 (alteration in original) (quoting Allstate Ins. Co. v. Kelly, No. CIV.A. 3:05-276, 2007 WL 403919

15

(W.D. Pa. Feb. 1, 2007)). District courts within the Third Circuit have disagreed about whether the applicable burden of proof is preponderance of the evidence or clear and convincing evidence.[5]

Again, Sigismondi does not dispute that it knowingly made false representations to State Auto, and the Court can conclude as a matter of law that those misrepresentations were material to the claim. See supra Section IV.B.1.a. Accordingly, the only remaining issue is whether Sigismondi made those false

---

[5]     U.S. Magistrate Judge Elizabeth T. Hey summarized the issue as follows:

> The Insurance Fraud statute is silent as to the applicable burden of proof. Common law fraud in Pennsylvania must be proven by clear and convincing evidence. Similarly, an insurer attempting to void a policy ab initio for misrepresentations made in the application must prove such misrepresentations by clear and convincing evidence. However, courts have disagreed about the standard applicable in section 4117 claims.

Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co., No. CIV.A. 13-284, 2015 WL 539550, at *12 (E.D. Pa. Feb. 10, 2015) (citations omitted).

After ordering supplemental briefing on the issue, Judge Hey concluded that the clear and convincing standard applied. See Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co., No. CIV.A 13-284, 2015 WL 1208150, at *4 (E.D. Pa. Mar. 17, 2015); see also Am. Nat'l Prop. & Cas. Co. v. Felix, No. 3:16-CV-147, 2018 WL 10234054, at *3 (W.D. Pa. Nov. 1, 2018) ("[D]istrict courts within the Third Circuit have applied the clear-and-convincing standard more often than they have applied the preponderance standard.").

Here, the Court need not determine which evidentiary standard applies because even under the clear and convincing standard, Sigismondi has pointed to no record evidence negating the inference that it submitted the false invoices with the intent to obtain inflated payments for the items which it claimed were damaged.

representations "with the intent to defraud." 18 Pa. Stat. and Cons. Stat. Ann § 4117(a)(2) (West 2021).

"[F]raudulent intent may be inferred if the facts show the insured had presumptive knowledge." Hepps v. Gen. Am. Life Ins., No. CIV. A. 95-5508, 1998 WL 564497, at *4 (E.D. Pa. Sept. 2, 1998). "Where it affirmatively appears from sufficient documentary evidence, that . . . false answers are shown to have been given by the insured under such circumstances that he must have been aware of their falsity, the court may direct a verdict or enter judgment for the insurer." Id. (quoting Derr v. Mut. Life Ins. Co., 41 A.2d 542, 544 (Pa. 1945)).

State Auto asks the Court to infer Sigismondi's intent to defraud from the fact that Sigismondi knew its statements (i.e., the falsified invoices) were false when it made them. Later, Mr. Sigismondi attempted to cover up the misrepresentation by falsely contending, under oath, that his assistant had contacted a vendor to obtain the pricing information even though he had provided it. Sigismondi's responsive brief focuses entirely on the issue of materiality and does not contest these facts, nor does it point to record evidence indicating that Sigismondi did not intend to defraud State Auto. On this record, no reasonable jury could find for Sigismondi even under the heightened clear and convincing evidentiary standard.

For these reasons, State Auto is entitled to summary judgment on its Pennsylvania Insurance Fraud Act claim.

### 3. Common Law Fraud (Count III)

Next, State Auto moves for summary judgment on its common law fraud claim.

Under Pennsylvania law, a plaintiff establishes common law fraud by proving:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

Sajid v. Ijaz, 828 F. App'x 831, 835 (3d Cir. 2020) (quoting Rohm & Haas Co. v. Cont'l Cas. Co., 781 A.2d 1172, 1179 (Pa. 2001)). "The burden of proving fraud must be established by clear and convincing evidence . . . ." Id. (quoting Rohm, 781 A.2d at 1179).

Again, Sigismondi does not dispute that it knowingly made false representations to State Auto, and the Court can conclude as a matter of law that those misrepresentations were material. See supra Section IV.B.1.a. The Court can also conclude as a matter of law that Sigismondi intended to mislead State Auto into relying on the misrepresentations. See supra Section IV.B.2. Therefore, State Auto satisfies the claim's first four elements.

18

However, while Sigismondi does not advance this argument,
the Court concludes that State Auto has failed to point to
record evidence satisfying the fifth prong—i.e., that it
justifiably relied on the misrepresentation. Even assuming,
arguendo, that investigation and litigation costs standing alone
could constitute justifiable reliance under Pennsylvania law,[6]
State Auto has not pointed to specific record evidence of such
reliance. Cf. State Farm Mut. Auto. Ins. Co. v. Lincow, 715 F.
Supp. 2d 617, 631 (E.D. Pa. 2010) (Robreno, J.) (finding
detailed witness testimony "point[ing] to first hand knowledge
that State Farm paid money to resolve claims of patients treated
by Defendants because State Farm believed and relied on
Defendants" and "indicat[ing] that [State Farm] had, in fact,

---

[6]     State Auto denied Sigismondi's claim and, as a result of prevailing on
Count I, it is not obligated to make payment. See supra Section IV.B.1.a.
While State Auto refers generally to the litigation and investigation costs
it allegedly incurred as a result of Sigismondi's misrepresentation, neither
party has briefed the issue of whether investigation and litigation costs,
standing alone, can satisfy the reliance requirement under Pennsylvania law,
and it is far from clear that they can. See Sky Harbor Atlanta Ne., LLC v.
Affiliated FM Ins. Co., No. 1:17-CV-03910, 2021 WL 977274, at *5 (N.D. Ga.
Mar. 15, 2021) ("Defendant argues that 'an insurer may show reliance [as
needed to support a fraud claim under Georgia law] by demonstrating that it
undertook and incurred costs during the investigation and adjustment of a
fraudulent claim.' The Court disagrees." (citation omitted)); see also Truck
Ins. Exch. v. Kafka, 911 F. Supp. 313, 316 (N.D. Ill. 1995) (holding no
reasonable factfinder could find the plaintiff insurer relied on the
defendant insured's misrepresentation, as needed to prevail on an Illinois
common law fraud claim, where the insurer "did not hastily pay the claim; to
the contrary, [it] refused to rely on the truthfulness of the claim and
investigated [the insured's] involvement," ultimately denying payment).
Further, as a result of prevailing on Count II, State Auto may seek to
recover its investigation and litigation expenses at a subsequent damages
hearing. See supra Section IV.B.2.

relied on the patients' records in the evaluation and payment of the claims" sufficient to show actual reliance), aff'd, 444 F. App'x 617 (3d Cir. 2011).

Therefore, State Auto is not entitled to summary judgment on its common law fraud claim.[7]

### 4.    Reverse Bad Faith (Count IV)

Finally, Sigismondi appears to move for summary judgment on State Auto's reverse bad faith claim. See supra Section IV.B n.2. However, its briefing is devoid of any argument directed to this claim.

At oral argument, State Auto represented that it would withdraw this claim unless the case proceeds to trial. Given the resolution of Counts I and II on the merits, see supra Sections IV.B.1-2, the Court will dismiss this Count without prejudice.[8]

---

[7]     State Auto could, of course, pursue this claim at a trial. However, it does not appear that State Auto would be entitled to compensatory damages beyond the litigation and investigation costs it may seek to recover as a result of prevailing on Count II, nor does it appear that punitive damages would be appropriate in this case.

[8]     Regardless, it appears the reverse bad faith claim lacks merit. State Auto describes this claim as "an independent tort that allows insurers to seek affirmative relief for an insured's breach of the duty of good faith and fair dealing." Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. 15, ECF No. 33-2. However, case law reflects a "decided bias against imposing such liability on insureds." 14A Steven Plitt et al., Couch on Insurance § 208:4 (3d ed. 2020). "This is, in large part, because other remedies for the insureds' wrongful conduct are effective in deterring it and protecting the insurer" since "[i]n cases of egregious conduct such as filing false claims, . . . insurers have the dual options of avoiding recovery on the policy, and filing actions for fraud against the insured." Id.

The case law to which State Auto points does not instruct otherwise. See Somerset Indus. v. Lexington Ins. Co., 639 F. Supp. 2d 532 (E.D. Pa. 2009) (addressing the insurer's motion for summary judgment on the insured's bad faith claim without engaging in any meaningful analysis of the insurer's

**V.    CONCLUSION**

For the foregoing reasons, the Court will deny Sigismondi's motion to vacate the Court's order dismissing its counterclaim, as well as its motion for summary judgment.

The Court will grant State Auto's motion for summary judgment on the declaratory judgment claim (Count I) and the Pennsylvania Insurance Fraud Act claim (Count II) and will deny its motion for summary judgment on the common law fraud claim (Count III). The reverse bad faith claim (Count IV) will be dismissed without prejudice. State Auto's motion for summary judgment on the counterclaim will be denied as moot. A hearing on damages will be scheduled at a future date.

An appropriate order follows.

---

reverse bad faith claim); <u>Greater N.Y. Mut. Ins. Co. v. N. River Ins. Co.</u>, 872 F. Supp. 1403, 1408 (E.D. Pa. 1995) ("The absence of a statutory right of an insurer to punitive damages does not preclude an insurer's claim against an insured for breach of a contractual obligation of good faith with the right to recover whatever common law <u>contract damages</u>, if any, it may have suffered.") (emphasis added), <u>aff'd</u>, 85 F.3d 1088 (3d Cir. 1996); <u>First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.</u>, 928 P.2d 298, 308 (Okla. 1996) ("[W]e reject the notion that the insured's responsibility to provide its insurer adequate notice of facts relating to insurance coverage can be translated into an actionable tort.").